UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Nirmala Moonsawmy, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JWS Acquisitions, LLC,<br><br>Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**Nature of this Action**

1. Nirmala Moonsawmy ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against JWS Acquisitions, LLC ("Defendant") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential telephone

1

numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

## Parties

4.  Plaintiff is a natural person who at all relevant times resided in Grayson, Georgia.

5.  Defendant is a real estate marketing and lead generation business headquartered in Atlanta, Georgia, and registered in Georgia.

6.  Upon information and belief, Defendant operates under one or more pseudonyms or fictitious names including, but not limited to, "JWS House Buyers."

## Jurisdiction and Venue

7.  This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

8.  Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) as Defendant resides in this District.

9.  Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as Plaintiff resides in this district and a significant portion of the events giving rise to this action occurred in this district.

10. In particular, Defendant directed its text messages to Plaintiff's telephone in this district, and Plaintiff received Defendant's text messages in this

district.

## Factual Allegations

11. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(404) 966-XXXX.

12. Plaintiff uses her cellular telephone as her personal residential telephone number.

13. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

14. Plaintiff registered her cellular telephone number with the DNC Registry in December 2018.

15. Beginning in 2022, and continuing on an intermittent basis, Plaintiff began receiving text messages on her cellular telephone from several telephone numbers regarding "propositions" for her home:





16. Plaintiff did not recognize the sender of these text messages.

17. Plaintiff did not request any quotes as referenced in the subject text messages.

18. Plaintiff is not, and was not, interested in selling her home.

19. Plaintiff is not, and was not, interested in Defendant's services or marketing.

20. Defendant's website, www.jwsacquisitions.com, is a real estate-related website that purports to buy homes from interested consumers, while also offering additional ancillary services to facilitate that process.

21. Plaintiff did not previously interact with the website www.jwsacquisitions.com.

22. In its website, Defendant represents that it pairs numerous services with its offers to buy Plaintiff's property.

23. Among these services are title and escrow services, as well as arranging

for the public recording of transactions to facilitate sales from homeowners to Defendant.[1]

24. Also among Defendant's offered services involve assisting with moving.[2]

25. Defendant purports to use a "team of experienced local realtors, licensed property inspectors, and specialized contractors" to appraise properties and determine a fair market value, as well.[3]

26. Defendant also represents that it provides an alternative service to selling a home through a realtor.[4]

27. Defendant also states that it sends representatives to inspect the

---

[1]   https://jwsacquisitions.com/sell-my-house-fast-atlanta-ga-georgia/ ("We'll then close at a nearby title company at a convenient time and handle all the paperwork for you. For proper title and closing, we carefully ensure the title, title insurance, escrow account, earnest money deposit, payoffs to mortgage companies, HOA dues and any other transaction funds are properly issued. Once the closing documents are signed, the sale is recorded on public record and the funds are distributed.") (last visited August 14, 2023).

[2]   https://jwsacquisitions.com/companies-that-buy-houses/ ("You also don't need to hire (and pay for) a real estate agent and we can help with all moving costs.") (last visited August 14, 2023).

[3]   *Id.* ("Our team of experienced local realtors, licensed property inspectors, and specialized contractors use our local market expertise along with industry-standard evaluation software and predictive market analysis to provide you a **fair, data-driven cash offer**.") (emphasis in original).

[4]   *Id.* ("We also offer a **cost-competitive** alternative to listing your home on the traditional market or paying real estate agent commissions.") (emphasis in original).

properties of interested homeowners in-person in order to assess the fair market value of the property and generate an offer.[5]

28.     Upon information and good faith belief, in exchange for providing these services, Defendant seeks to acquire property from Plaintiff and other homeowners at a reduced price, and, in turn, resell the property to a third-party buyer or investor at an increased price.

29.     As a result, Defendant necessarily offers to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, and connecting the homeowner with third party buyers—along with other services associated with home purchasing or selling—such as arranging for cleaners or movers—with its communications to Plaintiff.[6]

---

[5]    *Id.* ("Since we're located locally, we typically coordinate a time to come to your property in Altanta to see your house. Seeing your house in person also gives us the opportunity to meet one another. Meeting in person is truly important to us as we value building relationships with our clients over securing short-term profit gains.").

[6]    *See, e.g.*, https://www.liveabout.com/what-real-estate-agents-do-2866370 (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing[ the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.") (last visited August 14, 2023).

30. Upon information and belief, Defendant seeks to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, is compensated by obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price.

31. In other words, consumers such as Plaintiff would pay an effective fee to Defendant for its numerous ancillary services through Defendant's payment of a reduced purchase price to those consumers.

32. As a result, Defendant would be (and, upon belief and information, is) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

33. Additionally, upon information and belief, Defendant seeks to connect third party investors or homebuyers with discounted homebuying opportunities through the consumers it contacts, and sells that information to those third party investors through reassignment contracts.

34. As a result, Defendant either (1) solicited Plaintiff to sell her home to it at a discount in order for Defendant to resell Plaintiff's home at a profit, or (2) solicited Plaintiff to submit her information to Defendant's lead generation service and use Defendant's real estate-related services, which Defendant would then sell to other businesses for a profit.

35. Defendant sent, or caused to be sent, at least two advertisement or telemarketing text messages to Plaintiff's cellular telephone within a one-year period.

36. Plaintiff did not give Defendant prior express consent or prior express written consent to send text messages to her cellular telephone number.

37. Defendant sent the text messages at issue for non-emergency purposes.

38. Upon information and good faith belief, Defendant sent the text messages at issue voluntarily.

39. The purpose of the text messages at issue was to advertise and to market Defendant's business or services.

40. Plaintiff did not give Defendant prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

41. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

42. Upon information and good faith belief, Defendant knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

43. Upon information and good faith belief, Defendant disregards consumers' status on the DNC Registry as a matter of practice, and additionally fails

to even attempt to obtain prior express written consent to contact Plaintiff or other consumers regarding its telemarketing offerings, based on numerous complaints made by other consumers.

## Class Action Allegations

44. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom JWS Acquisitions, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting JWS Acquisitions, LLC's or its business partners' goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before JWS Acquisitions, LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**[7]

> All persons and entities throughout the United States (1) to whom JWS Acquisitions, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting JWS Acquisitions, LLC's or its business partners' goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of JWS Acquisitions, LLC, and a telephone number or address at which JWS Acquisitions, LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

---

[7] The "Federal Do-Not-Call Registry Class" and the "Sender Identification Class" are collectively referred to as the "Classes."

45. Excluded from the Classes are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

46. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

47. The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

48. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

49. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant, and by third parties, including members of the Classes.

50. Plaintiff's claims are typical of the claims of the members of the Classes.

51. As it did for all members of the Federal Do-Not-Call Registry Class, Defendant delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her telephone number with the DNC Registry.

52. As it did for all members of the Sender Identification Class, Defendant delivered solicitation text messages to Plaintiff's telephone number where the subject text messages did not state the name of the individual caller, the name of Defendant, and a telephone number or address at which J Defendant may be contacted.

53. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendant.

54. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

55. Plaintiff suffered the same injuries as the members of the Classes.

56. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

57. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

58. Plaintiff will vigorously pursue the claims of the members of the Classes.

59. Plaintiff has retained counsel experienced and competent in class action litigation.

60. Plaintiff's counsel will vigorously pursue this matter.

61. Plaintiff's counsel will assert, protect, and otherwise represent the

members of the Classes.

62. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

63. Issues of law and fact common to all members of the Classes include:

    a. Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

    b. For the Federal Do-Not-Call Registry Class, Defendant's practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

    c. For the Sender Identification Class, Defendant's practice of delivering text messages, for solicitation purposes, without identifying the name of the individual caller, the name of Defendant, and a telephone number or address at which Defendant may be contacted;

    d. Defendant's violations of the TCPA; and

    e. The availability of statutory penalties.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

65. If brought and prosecuted individually, the claims of the members of

the Classes would require proof of the same material and substantive facts.

66. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

67. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

68. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

69. The damages suffered by the individual members of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

70. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

71. There will be no extraordinary difficulty in the management of this action as a class action.

72. Defendant acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

### Count I
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Federal Do-Not-Call Registry Class

73. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-72.

74. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

75. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

76. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

77. Any "person who has received more than one telephone call within any

12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

78. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Federal Do-Not-Call Registry Class who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

79. Defendant violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiff and the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

80. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

81. Plaintiff repeats and re-alleges each and every factual allegation

contained in paragraphs 1-72.

82. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

83. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

84. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

85. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they

object. 47 U.S.C. § 227(c).

86. Defendant violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Sender Identification Class while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

87. Defendant therefore violated 47 U.S.C. § 227(c)(5) because of its violations of 47 C.F.R. § 64.1200(d)(4).

88. Plaintiff and the Sender Identification Class were harmed by Defendant's omission of this required information because they were (1) frustrated by their inability to identify the entity responsible for the solicitation communications at issue; (2) required to spend time attempting to identify the entity responsible for sending the text messages at issue; and (3) required to spend additional time investigating methods to get Defendant to stop delivering those messages.

89. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff and the Sender Identification Class are entitled to damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendant violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendant from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Classes damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

  i. Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

  j. Awarding such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: September 18, 2023

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@beal.law
Beal Sutherland Berlin & Brown LLC
945 East Paces Ferry Road NE,
Suite 2000
Atlanta, GA 30326
Telephone: (404) 476-5305

Alex D. Kruzyk* (to seek admission *pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed classes*